Hey Court, your Honor. In a plea to the Court, my name is Jeanie O'Job. I'm appearing on behalf of the Appellant, Colby's Elhouty, and I would like to reserve two minutes of my time for rebuttal, if possible. As set forth in both the opening and reply briefs, we believe this court should reverse the lower court's judgment. I would help you with that, thank you. It goes to the first of each case. Since I understand that the ECO lost this entire policy, it's not just a question of a dispute over one premium or something like that. It's a question of whether this loss of this entire life insurance policy and the other from it is overjured. That's correct, Your Honor. Because the insurance company has determined that the policy collapsed, Mr. Elhouty or the Appellant is no longer entitled to receive the death benefit under the policy upon the maturity or upon the death of the insured. So he has completely lost that right. He didn't really have that right. I mean, that was a prospective right of the policy, but he had to continue to make payments on a regular basis. The cases that you rely on for jurisdiction, I think, are distinguishable here because in those cases, the policy was undue. It was ready to be collected. The issues were validity of the policy and whether or not the premium was going to be paid. It was already completely owed. There was nothing else the plaintiff would need to do if the policy was declared valid other than collect. In this case, your client wasn't in a position to collect the $2 million debt because no one had died yet. No one has died yet, I'm assuming. And that he was just looking to have the right to continue to be insured for that year and to make a payment again in the future. So the $2 million isn't really collectible yet. I disagree with that, Your Honor, respectfully. It's our position, as you know from our papers, that he didn't make the premium payment or that the policy should not have collapsed and that he would be entitled to receive the debt benefit. Unfortunately, it is true that at some point, the insured would have passed. And if the policy was still in effect upon that period of time, then Mr. Hoody would be entitled to the $2 million. But that's it. In cases that you've got here, for example, Bell v. Philadelphia Life, the policy in that case was completely paid. There were no more premiums due. The question was whether or not the policy was valid and effective. And the court found that death is an inevitable benefit because there was nothing else the plaintiff had to do other than get a confirmation that, in fact, this money was due to him. In this case, there's no guarantees here. What the plaintiff is looking for is the right to continue to have this insurance, the peace of mind of having this for another year or until the next premiums due. But if he failed again to make a timely payment, then hopefully he hasn't completed the contract. It's not an invalidation of the contract. Certainly the insurance company is not seeking here, as I understand it, to say this insurance contract is void. We want to rescind it. We're going to give you all of your premiums back. It never should have been entered in the first place. They're just saying that this was a step that he needed to pay every however many months, and he missed it. And so it's now expired. It's not void. It's expired, and you're no longer entitled to receive the $2 million death benefit. But you're the passing of the insured. Right, but you weren't entitled to receive it when it expired. It wasn't on the table yet. I think that, I mean, in addition to the $2 million death benefit or the $2 million being an issue and the amount of controversy, there also is the question of all those premium payments that Mr. Elody or the appellant did pay in this case. There's something else. That's how insurance works. You have car insurance every year. You pay for your car insurance. If you don't have an accident, you don't get your money back. And if you don't have an accident this year, your car insurance policy is not worth the $250,000 of collision insurance you have if they cancel it because you didn't pay, you haven't had an accident yet, so there's not $200,000. It is an amount that's indirectly involved as a result of this controversy. Do you think that the $2 million isn't what you are trying to collect right now? We are trying to collect the right to the $2 million. The right to continue to have the obligation to pay premiums to someday be able to collect that $2 million. At this point, you couldn't just pay the difference between the $35,000 to be sent and the $50-some-thousand that the insurance company wanted to get the policy back, is that right? At this point, that's correct. You cannot do that. Is the policy still in progress? I don't believe that you can reinstate the policy at this point in time. And just going back to the court's decision on summary judgment, I think the critical issue is whether or not the policy should have been elapsed. The grace period notice of July 23rd, 2013, according to the court, according to the ability, constitutes a collapse notice. However, those are two distinct notices that should have been mailed to Mr. Louie, both under the provisions of the policy and both under the insurance code. And I understand that there was a vacancy where under both the code and the policy, he was entitled to notice, but I didn't see where he's entitled to. I mean, those are separate. Is this appropriate? If I may explain that, Your Honor, the grace period notice that was issued in July of 2013 was triggered or was sent to Mr. Louie because the net surrender value of the policy was less than the current policy month. Once he received that, that triggered the date of the 61-day grace period for him to make a payment. But didn't it say in the letter, if you don't send us $55,000 by such-and-such date, your policy is over? It did say that in every grace period notice in this case. Why isn't there a notice that if he doesn't send $55,000 by that date, his policy is over? Because there is a separate requirement, according to the policy itself, that we'll send a written notice to the most recent actor, so you have to give at least 30 days prior to the date coverage lapses. Well, it wasn't just 30 days, it was 60 days. Correct, but it was 60 days to trigger the grace period because the net surrender value of the policy was lower than the actual value of the policy itself. If I could just cite to the insurance code section, I think that might help flush out the distinction. In insurance code section 10113.71, subsection B3, it states that notice shall be given to the policy owner within 30 days after a premium is due and unpaid. So once the grace period notice was generated and sent to the appellant, he also received a notice of planned payment, which was indicating that he had a payment due in August. Once that payment was made in August, this insurance code section and the policy provision on page 166 of the policy should have triggered the insurance company to send a notice of lapse. So you're saying that there should have been two notices when the Monday sent, July 23, and then a second one saying if you don't submit this payment by next day, your policy will lapse. That's partially correct. We all maintain that the insurance company needed to send a grace period notice. They just need to afford the appellant to the grace period. Our position is that they should have or they were required to send a notice of lapse. So what they should have done is when the grace period was over, they had started the 30 days for another notice. Is that what you're saying? They should have sent another notice after the grace period ended? Not when the grace period ended. When the notice of planned payment notice indicated the date the payment was due, the next premium payment under the policy was due, which was, I believe, August 23rd or 22nd of 2013. Once that payment was not received by the insurance company or on that date, because I believe these notices were automatically generated in August of 2013, the insurance company should have generated and mailed a notice of lapse to the policyholder, indicating that if you do not receive payment within 30 days, which would be September 22nd, I believe, of 2013, then your policy will lapse. So it's a separate requirement. You say it's under the policy or under separate regulations? It is under the policy. The policy simply states we will send a written notice to the most recent address we have for you at least 30 days prior to the date coverage lapses. The policy also provides that the policy is subject to the laws of the disease where the application is signed. So taking that into consideration, the insurance code section 10.113.71, the subsection B3, which I cited earlier, and section 10.113.72, subsection C, apply as well based on the terms of the policy. And .72, subsection C specifically states notice shall be given by first-class U.S. mail within 30 days after the premium is due and unpaid. And that was not a requirement in this case. You're saying that this application is signed in California? Yes, it is signed in California. It applies and it controls, meaning that the policy seems to be consistent. I'm sorry, could you repeat that? You're saying that the California insurance code applies and controls over whatever language is in the insurance policy? Yes, that's exactly what I'm saying. In this notice, October 1, 2013, that wouldn't satisfy that? No, Your Honor. You can see that that was already, things were already delayed by then. Well, they say that you can reactivate it. If he signs the imposed application and pays $53,053, is he void? That is another provision in the policy for re-obtainment of the policy once the policy has already elapsed. So that is something that is triggered after a payment is not received and the grace period expires and then the policy has already elapsed or terminated. He does have an opportunity to reverse the policy or draw out an opportunity to be reinstated. All right, thank you. Do you have some questions for the rest of your time? Yes, yes. Thank you. I'm going to go ahead and turn it over to the attorney general to talk about the next step in the process of getting a new policy. So, I'm going to turn it over to the attorney general. Thank you. I'm going to turn it over to the attorney general to talk about the next step in the process of getting a new policy. Good morning, ma'am. Please record. My name is Kate Villanueva, and I represent the Appellee Lincoln Benefit Life Company. Before getting into some of the specifics that the appellant has raised, I think we ought to step back a bit and remind ourselves this is a single count declaratory judgment claim that's akin to a breach of contract claim. It pertains to the limited question of whether Lincoln Benefit breached the terms of the policy. That is, whether Lincoln Benefit complied with the terms of the policy in recognizing that the policy had elapsed. One contextual remark here, the policy ensures that it does have to be interpreted in accord with California law, correct? Yes, Your Honor, that's correct. I mean, California is a matter of public policy. It can have said terms and sense. We don't care what the policy says, so we deem to provide this. That's correct. It's our position that the statute, the 101-13.71 and 101-13.72, are consistent with the terms of the policy, and there's no conflict in that Lincoln Benefit complied with those provisions as well. I would note that there is no private policy. Go ahead and explain that in more detail. Sure. This policy is not like the traditional policy that some of us may think of when we think of life insurance. It's not like a term policy where the policy will continue. Actually, Your Honor, there are some life insurance policies where you pay a whole bunch of the fund, and the insurance company expects to make enough from the interest so that it will be able to cover subsequent premiums without you sending any checks. That's right. And sometimes interest rates are so low, you have to send the check anyway to get funding in. That's right. This is that kind of policy. Yes, I think the cash value accumulates over time. You can pay premiums in whatever amount and whatever frequency you wish, as long as that cash value is sufficient to cover the monthly deductions that are made. And the policy contemplates that you will receive notices of planned premiums due, but the policy really, you can pay at whatever frequency you want. Actually, the policy, though, the thing that most typically happens if the upfront premiums are high enough is you get an understatement. We've had to take part of your premium out of the cash value, so your cash value is reduced, but your payment on death amount remains sufficient. That's the most typical pattern that's in a life insurance policy, I think. That's correct. In this instance, it's not as if the premium is sufficient. But you're the one using enough cash value. That's right, that's right. In this case, what happened is in July. So why do you have to send the notice that the plaintiff is for regardless of when you sent the notice 60 days before? So I'm not quite sure I understand exactly what notice the plaintiff alleges that we should have sent, but I will say that we send what the contract requires, so I don't think we need to send anything more because we comply with the terms of the contract. Okay. So what she's saying is that there's an additional notice that's required under California law, and your contract obviously requires you to comply with California law. So she's saying after you should have sent another notice under Cal Insurance Code Section 109 to 13.01, 30 days after, I guess, your proposed termination date, which was September 22, you need to say that the premium was due and unpaid. On one preliminary note, that their position that we didn't comply with the statute is actually brand new. It's being raised today for the first time. If you look at the papers, they admitted that we, that that statute didn't apply to this case. That was in the opposition to our motion to summarize judgment at page 9 of the report. Usually the brief would be either the red one, the blue one, the gray one that are filed in this court. So I'm not sure that they came out and said that the statute doesn't apply in the appellate briefing. I don't know that that was brought up by them as an issue, but in response to our position in the district court, the appellate said there that the statute does not apply. I disagree, though, with their interpretation of that statute as did the district court. I think when the statute refers to a premium due, that's akin to the cash value of this policy being insufficient to cover the monthly debt deductions that are necessary to continue that policy in force. That, in this case, is what triggered the grace period. The appellant has conceded that we provided that full 61-day period for the policyholder to get the policy back on track. We also sent notice not less than 30 days before the policy was contemplated to lapse, and we did that. And so I don't see that there's another notice required by the policyholder for the statute. Do you have a question? Do you have a question? You said that the 2006 appellant says your net surrender value is not enough to cover the premium. We have to send $55,000 before the end of your grace period, September 22. And what did the appellant say? We were required to send another notice, but what we knew, as soon as the policy lapsed, that is on September 22, or a notice dated September 22, we notified the policyholder that the policy had in fact lapsed, because we had not received the payment during that 61-day period. So you're saying if you did have to send a second notice, that was it? That's a difficult question for me to answer, because I'm not sure what, I don't know what that notice would be. I mean, we provided the policy. I'm not prepared on this, because I didn't catch it on grace. Yeah, I mean, I was thinking things about what that second notice would be, and my understanding is that maybe they wanted two notices, that is, a notice that the policy had entered its grace period, and then also a notice in 30 days saying that the policy was going to lapse in essence. What we did is actually provided the notice earlier, and the policyholders wanted that notice to be issued not less than 30 days, but it still lapsed, and we gave a full 61. Does that mean somebody overdue when they're in their grace period? Because otherwise it wouldn't be grace period, is that right? That's exactly right. And that's to the benefit of the policyholder. Does that mean time on YouTube can't wait? Right. That's right there. Can you talk about just what that is? Can I talk about it? One, if you're playing hardball, you can't deal with someone that wasn't on paper in that span of a grace period. That's exactly right. I know you had a comment, Your Honor, in response to one of the questions that you asked about the appellant, which is when the policy lapsed, we did send a letter and let the policyholder know that the policy had lapsed. That was on September 22nd. And then also there was another notice after that, you know, reminding the policyholder that the policy had lapsed. In both of those letters, we explained that the policyholder could apply for reinstatement, could submit a certain amount of money, and also is in an application for reinstatement. That's all contemplated in the policy as well. We did that. The application was never submitted to Lincoln Medicine, and no effort has been made to reinstate the policy in that regard. So there is a right of reinstatement that was not applied for here. All right. Do you want to address the jurisdictional question? I will address that briefly. The appellant here is not the insured. I think we all understand that. The appellant is the owner of the policy. So he purchased the policy from the original owner many years after the policy was issued. So when we're talking about the jurisdiction of this court and the district court, the plaintiff's appellant is not just the beneficiary of the policy. He is the owner of the policy. It is an asset. He owns that asset. And it's our position that the value of the asset that has been in courts and treated that as the policy limits, in this case $2 million, is what is used to determine the amount of controversy when there's a question over whether coverage exists. But you missed the authority. On the question of? On the question of the diversity and the amount of use based on the value of the policy rather than the amount of the authority. Your Honor, I don't have the jurisdictional briefs in front of us, but it is the authority that we cited in our briefs, and I don't believe there's more persuasive or more applicable authority that I can share with you now. And our review of that authority certainly is not that old. It's not that old, isn't it? It's bad. It's not admirable or whatever. But those cases all talk about policies that are being avoided, where the validity of a policy is an issue as opposed to the termination of a policy. And I think there's a substantial difference. If you say a contract is invalid and void, it's different than saying you haven't met a term and it's terminated, it's over. Respectfully, I'm just not sure that I would agree with you. I agree, number one, that those cases are old. I also agree that the question in those cases primarily is whether the policies were void. But it is whether the policy is enforced or not, whether the coverage is available or not, is really the question as to whether it's void or whether it's lapsed. So I think that the bottom line is still, is the policy, excuse me, enforced? Is there coverage available? You started to make a difference there that I'd like to flesh out a little so maybe I can appreciate it better because instead of doing this, like, I bought insurance, I bought a life insurance policy, I've got to pay X amount every year to have it in effect. It's not owed to me until I die and then it's going to go to my beneficiaries. You described this as an asset that someone bought that it was really a transactional deal to get this money at the end of the day. Do you think that's a distinction? Well, I do. I think I might take the same position if this product was a little bit different. But certainly with respect to this product, it accumulates cash value. So over the course of the life of the policy, there is cash available to the policyholder and the policyholder, it is an asset anyway. Well, so the cash value at the time that this expired, that it lapsed? Well, the cash value had crinkled to zero, and that's why the policy had turned into a race period. So then the amount dispute would have been the cash value and it was there longer. But I don't think we can say that the asset that is the determination as to whether coverage is enforced is the value of the cash value of the policy at that time. It's the asset that is coverage enforced. So I guess it's not certainly cash value. There used to be policies like this. I know there used to be very commonly policies like this that were available for four annual payments. You had four annual payments and you never have to bring in another annual premium. You never have to bring in another premium payment. I think there were also single premium policies where you just paid huge premium once in, say, 1970, and then if somebody, the named insured dies in 2020, the full amount is paid. So the value of the thing is a fully paid life insurance policy, and they are typically not owned in those days by the named life, the named insured, because the state taxes had a much lower floor. So a Muslim owned the policy in his wife's life. A white man owned the policy in a Muslim's life. I don't think this is that type of policy, except it was more premiums. Is my understanding correct? It is similar to the type of policy you're describing. For example, at the time of issuance of this policy, the policyholder in theory could have dumped in many millions of dollars and just sat by and never paid another premium again. Well, we think the cash value of the policy was sufficient every month to cover the monthly deductions at the end of the day. The policy you're describing, I believe, is that. It's just a matter of everyone understands up front that there's healthy choices. Because everyone figures an insurance company will make some money from the money. The way I look at it is if a plan were to win in this case, what she would get is a life insurance policy with a value of $2 million subject to her continuing to make the requisite payments. That's right. It would comply with all the other international terms, yes. That's right. Though, if any, it would need to get its $2 million base value, $2 million policy back. That's right. No, if she gets the right to continue to owe the money on a $2 million policy. I'm still stuck on this problem that because this is an ongoing obligation, and look, they've already breached it once, that if we reinstate it and allow them to reinstate the policy, there's no guarantee they're going to not breach again in the future. The $2 million is not the object of the litigation. It's a potential for someday. I'm just looking at the cases that have been cited, and I know this area is a little vague, and maybe this is just my personal problem, but all those cases talk about someone who's ready to collect. They either have a disability claim or the fruition, the thing that made the policy ripe and ready to collect that end game, that $2 million, was done. There was nothing else that would ever be owed by them. They either bought it all up up front, and it was just due, and there was a dispute over whether or not it actually had to be paid, whether or not the policy was actually effective, because something was defective about it. And since the fact, this is just you have an obligation to make these payments. You missed them, so we're done. The deal is over. Your Honor, I do believe that there is authority, and I apologize if this is outside of memory, but I'd be happy to participate in breaking on this after argument. There is authority on the issue of a lapse policy, that the policy has not yet matured, and the policy has lapsed, and courts treat the amount of controversy as the policy limits for purposes of the lapse. I think the issue is, sure, if it lapses again, that doesn't mean that the potential base value isn't $2 million. That's right. Or the owner of the policy could prepay, and then just sit on it, and he's going to get $2 million when the name danger dies. Yeah, I mean, that is his right under the contract. Like I said, he could dump any amount of money that he wants. He has no obligation either way. He can pay the amounts when due. He can prepay, or he can not pay and let the insurance go away, and then he decides money now is worth more than $2 million later. Right, so just one comment, of course. That is right, and that sort of relates to Judgment's biggest question, which was your comment about him being able to breach the policy in the future. We don't consider it's not a breach, right? If the policy lapses by its own terms. So, you know, he doesn't breach by not paying us. If he doesn't make a prostitution payment, the policy lapses. It's not a breach. You know, the status of court declaratory judges that really do what they want is to get the policy back. They never tender to the amount of money they would take to get the policy back. And why is that? No. No. What happened is they made a late payment in September of 2013. We responded in kind and, you know, advised the policy holder that the policy had lapsed, and then we could not accept that premium payment, and then we would refund it. They attempted, I think, although I'm not sure that this is part of the record, they attempted another premium payment in January 2014, and it was similarly refused. I said I understand you. They could have reinstated for the same amount of premium payment, right? Actually, the cost, the amount of premium that would have had to accompany an application for reinstatement was more than what they had submitted late. Did you tell them that? Yes. Yes. That is on the face of the letter, I believe it's dated October 1, in which we said, Sorry, you made a payment. It was too late. Again, you can apply for reinstatement. Don't apply for reinstatement. We will need this much money. I think it was roughly $53,000. They still have the right to apply for reinstatement. They do. I believe they have the right to apply for reinstatement, since it's up to five years after the policy has lapsed. All right. Thank you, counsel. Thank you. Thank you, counsel. Is there a time gap of two minutes? I think we do. I actually don't know if I should just comment on the arguments from earlier, unless you want to set other questions. I think getting you unveiled a person's signature back to the judge, I appreciate it. We think it is a good and essential part of this court, and it's very important that we do.
judges: Kleinfeld, Wardlaw, Bencivengo